Judge Mills
delivered the opinion of the Court.
This is a bill filed by Frances Gore, in which she states, that having remained with her father after the rest of the children had left him, he was pleased to devise to her, a greater portion of his estate than fell to the rest of his children; that after his death; being unprotected, unmarried, and dessolate, she took shelter with her more remote relations, and afterwards removed to this country, with John W. Sumersall and his wife, the now defendants, Sumersall’s wife being her niece; and in the removal, she furnished the waggon, and bore the expenses of his family; that after her arrival in this country, she, at his solicitations, agreed to live with him, and continued to stay with him, for two. years and a half, or thereabouts. That before she resided with him, he had one of her slaves hired for one year, and during her residence, more of her slaves continued to labor for him. That during the same time, he had borrowed money from her, and had never returned it; nor had he yet refunded the expenses of removing his family to this .country, *506 or paid the hire of her slaves; and that he had used up and converted much of her personal estate to his own use. That during her stay in his house, he had induced her, by pressing solicitations and entreaties, to convey to him a tract of land in Montgomery county of 150 acres, devised to her by the will of her father, and as a consideration therefor, •or as an inducement to her to sign the conveyance, he gave her a bond, binding himself to support her during life, to furnish her with a separate room, to furnish her with all necessary clothing, to find her a servant to wait upon her, and ahorse to ride when necessary, together with every article necessary for -her comfort and convenience. That before she had signed the conveyance, he got it prepared by counsel, as well as the bond he was to give her; and on one evenin;,, lie and his wife near the hour of bed time, came to her room and pressed her to sign the conveyance, which she declined doing that night, but next morning she yielded to his solicitation, and he gave the bond to support her. That a short time afterwards he treated her harshly and uncivilly, and then proposed to her, to surrender back to her the conveyance for the tract of land, if she would give up the bond for her maintenance, and that she acceded to his proposal, and surrendered to him his bond which he destroyed, and he surrendered to her the conveyance for the land, which she supposed annulled it entirely; and then he urged her to leave his house immediately, (although it was raining and she was unwell,) which she did do. That after leaving his house she discovered that the conveyance which he surrendered to her was not made to him in his name, but to his wife; that the consideration expressed on the face of the conveyance, of which she was before ignorant, was the natural love and affection which she bore to his wife; and that the conveyance had been proved and registered in the proper office, and consequently, its surrender to her by him, was of no avail, as it was a subsisting conveyance to the wife. She charges that she had caused frequent applications to he made to him and his wife for a release, and they had frequently promised it, and declared her entitled to it, and at *507 length refused to do so, under the pretext that the wile was unwilling.
Prayer of the bill.
Sumerasll’s. answer.
She prays that the deed may be cancelled and released, or if that cannot be granted, that the bond for her maintenance surrendered by her, may be reinstated, and money be decreed to her for a breach thereof, that an account may be taken of what he he owed her for furnishing the waggon, bearing ex-expenses to this country, the hire of slaves, and money loaned, and that the sum found due might to be decreed to her.
Sumersall answered, admitting that she furnished the waggon, and paid some of the expense,, in. re-, moving his family to this country;, hut how much, he did not know, as he sometimes paid part himself, and to this item he pleads the-statute-of limitations. He admits that he borrowed her money,, which had not been restored, and that he hired a slave from her, for a year before she lived with.him; but these items, he. alleges, are legal demands, and not. recoverable in equity. He admits the service of her slaves while she lived with him, but denies there-was any contract to pay hire. As to the land, he alleges, that she had often expressed the determination to give it to his wife át her death, she having no lineal relatives; th.at he procured the deed to be prepared at her request; that the first one prepared, did not please her, and he then got a second drawn, and admits that he exhibited it to her one night in her bed chamber at a late hour,hut. did not urge her to sign it then; that she signed it the-next day, and acknowledged it. in the presence-of some strange witnesses, at her request; that the-consideration expressed on the face of the deed, is the true one, and denies any other. He admits-that he gave such, a bond for her support, as she-describes, but denies it was in consideration of the deed for the land; that she kept the bond and he the deed, for about six months,, when she became dissatisfied and ill-natured, and proposed giving up the bond and he the conveyance, to which he acceded, and it was accordingly done in the presence of witnesses, and the bond destroyed, and that- he directed her to leave his house; that she had appli *508 eel through others, afterwards, to procure a release for the land, from himself and wife, which he was willing to have executed, but his wife dissented; and having no right to compel her to release, he declined acting further; alleges that he fulfilled the bond for her maintenance, and was guilty of no breach of it during its existence, and since its distraction he is clear of it.
Answer of Sumersall’s wife.
Decree of the feircuit court.
Chahcolloi looks with suspicion into contracts amde with persons in situations which give to the other contracting parties an undue influence or control over them.
*508 The Wife of Sdmersall answered, stating that she understood from the complainant, the consideration for making the conveyance was natural love and affection, and if there was any pther motive she was entirely mistaken about it. She insists that compelling her to -surrender the title, after it was freely bestowed, would be tantalizing her, and trifling with her feelings, and she hopes it will not be done. Denies that she had any hand in surrendering the conveyance, and trusts she will not be prejudiced by what her husband did.
The court below did not deem the proof sufficient to show that the consideration of tnedeed was the bond for maintenance, if sucli proof was admissible, and decided if the bond was the consideration, the title had been given to the wife when .the husband engaged the consideration, and therefore the wife as a third person, could not be compelled to surrender the title. That the bond for maintenance could not be decreed, because, from the tenor of the transaction, the maintenance was to be furnished at the house of Snmersall, and such engagement could not he decreed specifically, and that damages could not be given in lieu of specific performance, as no breach was proved. The bill was therefore dismissed with costs.
We cannot concur with the court below that this is a case in which the chancellor cannot, and ought not to interfere.
The case is one which will be viewed with a jealous eye by the chancellor, and the situation of the complainant, and the relation of the parties will soon awaken his suspicions. The complainant is a solitary female, without husband or father, and of *509 Course dependant, and her confidence may be easily gained, and influence over her may be easily acquired, and then as easily abused. According to the defendants account of her, she is now ag'ed and infirm, and often pfeevish, and of course at other times more yielding, and always conscious of a want of self-management. She has an estate in land and slaves, at which her relatives will cast a wishful eye, as that, which at her death, would become free booty, as she has no descendants. Jealousies therefore, of her friendship to one collateral relation more than to another, will naturally arise, lest the present favorite shall become the object of her bounty by will; there is a strong temptation presented to her younger relations, especially those standing in the attitude of Sumersall and wife, to acquire her confidence and an influence and ascendency over her, by means of which they might anticipate the hour of her dissolution, and to cause her to dispose of what she held, by gifts and grants in life, lest at death, they might not be the fortunate relative^ According to Sumersall’s own account in his answer, he is not free from these feelings and expectations. He tells us that at the birth of his wife, the complainant gave her her .own Christian name, and had since declared that she (his wife,) should be her sole heir, and that this circumstance, as well as a promise she had made to him, that she would give him some land if he would come to Kentucky, induced him to have the deed prepared for her to execute, knowing the uncertainty of human nature, and that she might die without a will. ' This statement he makes as an apology for what he has done, and proves that he was only anticipating her death, and avoiding the uncertainty of acquiring the same by will, instead of being acted Upon by the high and honorable motives of benevolence to his wife’s relative, and leaving to herself the disposition of her bounty, unsought, by will. When he denies that the bond for her maintenance was the consideration of the conveyance, he found it necessary to affix a consideration to the bond and to assign a reason for his liberality in giving it. He 'therefore says, that his motive for doing this was, *510 she had several slaves which generally lived with her where she resided, and it was the bare expectation, without her engaging that he should, that he would thus get the use of those slaves in his family, and that she might leave some of them to his wife and children at her decease. That shortly before the surrendering of this bond, she had paid a visit to some of her relations and hired out a negro woman, which was a principal hand in his family, and when he asked her about it, she answered with displeasure, and the indignity offered to him by this behaviour, excited within him such indignant feelings, that he proposed to her a rescission of all contracts, and an exchange of papers; and admits his passion at that time to be such, that he would have' surrendered the deed, if it had been made to himself. It is remarkable, as wanting probability, that he should give this obligation upon himself to support her during life, barely for the probability and expectation that he should have the use of her slaves, without her engaging that he should; and that when she attempted to dispose of one by hire, which she had a right to do, and which, according to his own account, she was not bound to abstain from, it should have put him into such a frame of mind, as to cause him to give up all. it is more inferrable from this circumstance, that be was contented to fulfil his bond, while he entirely coutroled her estate as owner. But when she resumen the ownership, even of that part which he does not pretend that she had surrendered to him, it awakened his fears of ultimate loss, or of a disposition to others, and consequently excited passion. It seems also to follow, that he had began too soon, to claim her estate, instead of waiting her bounty at death.
Case of an aged female., without hus-' band or children, residing with a niece" and her husband.
An aged, unmarried female conveyed to her niece her real estate,in consideration of the obligation of the husband of the niece to support her in his house during life, and after-wards the parties quarrel, and agreeing to cancel the contract, the bond and deed are surrendered and cancelled, and she was turned out of doors; but it is afterwards found, the deed had been registered, and the wife refused to reconvey— —She shall surrender or the husband pay damages for broach of his contract.
*510 We do not doubt the power of the chancellor over this subject, either to rescind the conveyance as was attempted, by decreeing specifically, the rescinding contract, if the wife can be reached by the decree; or if this cannot be done, the chancellor ought to set aside the rescinding contract and place the parties in static quo as near as can be done, or if this cannot be done, to decree a compensation for the bond of maintenance. It is evident that Sumer *511 sail would never have gotten up this bond, unless he had tendered the conveyance, and that she supposed she was actually regaining her land. If she has failed to do so, he cannot be permitted to avail himself of the rescission; his bond must be considered as existing in equity, and obligatory upon him, and his sending her from his house is a clear breach, for which damages might be decreed in equity, as the bond is destroyed. Either the complete rescission ought, therefore, to be decreed, or the rescinding contract ought to be set aside and relief granted to the extent of his obligation.
B at as the first object of the bill is to set aside tbe conveyance and regain the land, we will first inquire whether tbis ought to be done, as it may render unnecessary, all iuquiry into the other mode of relief. The only objection to this being done, is tlie interest of the wife of Sumersall in the land, as the conveyance is made to her, expressing on its face only love and affection. We need not inquire whether this consideration can or cannot be disproved; for if it be granted that it cannot, yet, it is competent to show other inducements which caused the complainant to execute the deed for the consideration expressed. We cannot help observing the caution with which the defendants in their answers, confine their denial expressly to consideration, and totally omit to respond to the inducement of a support for life, which the complainant alleges was held up to her at the time. They do not, either of them pretend to say that the bond was given at a different time from that of the deed, and leave it, from their language, to be inferred that it was executed at the fame time as the bill charges the first to be. At the time of the surrender of papers, it was admitted by Sumersall, that one was the inducement to the other. Afterwards, when the mistake was found out, and he was applied to to rectify it, by proper .release, he admitted the fact to be so, and agreed to have it completed. Add to this that he gave up the deed before he could get the bond, which is a fact that coupled with the other circumstances in proof, speaks loud in contradiction of his answer, and the feet must be taken against him as true. He after- *512 wards protested solemnly or declared with irnpre-' cation, that he believed the surrender of the deed had done all that was necessary to complete the rescission. The reason assigned by him, that he does not complete it is, that his wife was unwilling. This turns out not to he the case in the first instance, fie, as well as his wife, expressed an entire willingness, and afterwards, when pressed to do so, he refused, unless a negro was given him. As this was refused, he now takes shelter in the unwillingness of his wife. But can this agreement of his to rescind, made by him and executed by him alone, operate upon the title of his wife? It is not pretended that she was not privy to it, and it is evident that she assented to it afterwards: but is this such an agreement on her part as can be decreed in a court of equity?
Whore the acquisition of the title by the wife is fair, tho husband’s rescission of the contract whereby it was acquired, cannot effect ¡her; but she shall not hold an estate acquired by their joint fraud.
Admit the fact to he, that the contract in the first instance, was fair and equal, and that the husband acquired, procured or purchased this title for his wife, by a contract uncontaminated and complete, we conceive it would follow that the husband coulcl not at pleasure rescind that contract, and take the title from his wife. But if the contract in the first instance was unfair, we cannot agree that the wile would be a depository of the title too sacred to be reached by the decree of the chancellor, or that the wife, being a volunteer, could hold, to the prejudice of the person defrauded. The re-conveyance .of the title, therefore, must depend on the character of the original transaction, by which thjs conveyance was acquired.
The wife was privy to the circumstances as well as party to the conveyance. She is charged with it and does not pretend to deny it, but admits enough to show that she understood the whole. We have already seen that the influence acquired over tiic complainant was considerable, and that she labored under the disadvantages of unprotected weakness, and that the motives which influenced the opposite party, were not of the most noble character. Under those circumstances weaker evidence of fraud will overthrow the transaction. This evidence is *513 pot wait ting. We cannot doubt that the bond and conveyance were executed at the same time, and that one was intended as the consideration of the other, but to name this consideration was omitted, for purposes not laudable; nor do we admit a doubt that the wife’s name, instead of the husband’s, was inserted in the grant without the knowledge of the grantor, or at least without a knowledge of the efects of it; and it is clear that the wife was willing to set the matter right, and that.the refusal now is only for the purpose of retaining the title. Under these circumstances, we have no hesitation in reaching the wife as well as the husband, and of compelling them both to reconvey the title with warranty against themselves and their own acts.
Demands rer jected because they belong to the court of lavr.
Hire for the slaves of an inmate of the house refused because the parties had not understood there iva's to bo a compensation.
U. B. Chambers, for plaintiff; Jas. Trimble, for defendant.
As to the remaining claims set up in the bill, they are unconnected with the conveyance of the land, and no reason is assigned why a court of law cannot give complete redress. We allude to the money expended in bringing Sumersall and family to this country; the money borrowed by him, and the hire of a slave before the complainant lived at his house. Not even the necessity of a discovery is pretended, or any mutual accounts existing. To the common law she must, therefore, go to recover these demands.
As to the labor of the slaves while the complainant lived with the defendant, no charge ought to be raised, because there was no intention at the time, that the one party should charge, or understanding that the other should pay for it. It is, therefore, no ground for a suit either in law or equity.
The decree must be reversed with costs, and the cause be remanded, with directions to render such decree thereon, with costs, as shall conform to the opinion of this court,